UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RUSSELL J. WAGNER,

       Plaintiff,

v.                                                            CASE No. 8:13-CV-28-T-17TGW

CAROLYN W. COLVIN,[1]
Acting Commissioner of Social Security,

       Defendant.

_____

## REPORT AND RECOMMENDATION

       The plaintiff in this case seeks judicial review of the denial of his claims for Social Security disability benefits and supplemental security income payments.[2]  Because the decision of the Commissioner of Social Security is supported by substantial evidence and does not contain reversible error, I recommend that the decision be affirmed.

_____

     [1]On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security and should, therefore, be substituted for Commissioner Michael J. Astrue as defendant in this action.  See 42 U.S.C. 405(g); Fed.R.Civ.P. 25(d).

     [2]This matter comes before the undersigned pursuant to the Standing Order of this court dated January 5, 1998.  See also Local Rule 6.01(c)(21).

## I.

The plaintiff, who was forty-three years old at the time of the administrative decision and who has a tenth grade education, has previously worked as an automobile detailer and lubrication servicer (Tr. 42, 43, 45, 59). He filed claims for Social Security disability benefits and supplemental security income payments, alleging that he became disabled due to insulin-dependent diabetes (Tr. 173).[3] The claims were denied initially and upon reconsideration.

The plaintiff, at his request, then received a <u>de novo</u> hearing before an administrative law judge. The law judge found that the plaintiff had the severe impairment of insulin-dependent diabetes mellitus (Tr. 22). He concluded further (Tr. 23):

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant should not climb ladders, ropes or scaffolds; the claimant can occasionally crawl, but other postural activities can be performed frequently; the claimant should have no more than occasional exposure to hazards such as dangerous machinery or

---

[3]The plaintiff claimed initially an onset date of April 1, 2007 (Tr. 174). Plaintiff's counsel subsequently requested to amend the onset date to August 2008 (Tr. 228).

> unprotected heights; the claimant should have no
> more than occasional exposure to extreme heat or
> cold; the claimant can perform on a sustained basis
> with the customary work breaks every two hours,
> which includes a lunch break.

In view of these limitations, the law judge determined that the plaintiff could

not return to prior work (Tr. 27). However, based upon the testimony of a

vocational expert, the law judge found that jobs existed in significant

numbers in the national economy that the plaintiff could perform, such as

light jobs of cashier II, photocopy machine operator, and laundry sorter, and

sedentary jobs, such as surveillance systems monitor, phone order clerk, and

call out operator (Tr. 28-29). Accordingly, the law judge decided that the

plaintiff was not disabled through the date of the decision (Tr. 29). The

Appeals Council let the decision of the law judge stand as the final decision

of the Commissioner.

## II.

In order to be entitled to Social Security disability benefits and

supplemental security income, a claimant must be unable "to engage in any

substantial gainful activity by reason of any medically determinable physical

or mental impairment which ... has lasted or can be expected to last for a

continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3), 1382c(a)(3)(D).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

### III.

The plaintiff, in challenging the law judge's decision, raises three main issues, although the first contention raises a number of sub-issues. None of the plaintiff's arguments is meritorious.

-5-

A. The plaintiff argues first that there is not substantial evidence to find the claimant less than fully credible (Doc. 16, p. 6). This contention is meritless, as the law judge gave a detailed explanation, supported by substantial evidence, for finding the plaintiff only partially credible.

The plaintiff, who has had diabetes since he was a teenager, testified that his diabetes causes unpredictable and debilitating fluctuations in his blood sugar levels (Tr. 47, 51, 53-54). Specifically, he stated that, when his blood sugar drops too low, he feels dizzy and confused, and he has difficulty concentrating (Tr. 51, 53; see also Tr. 48). The plaintiff also testified that he feels fatigue when his blood sugar level is too high (Tr. 52). However, the plaintiff states in his memorandum that it is primarily the low blood sugar that precludes him from working (Doc. 16, p. 14).

The plaintiff stated that he takes sugar pills to moderate his very low blood sugar levels, although he does not always realize what is happening and sometimes requires assistance "to get sugar in [him]" (Tr. 48, 49, 51, 52). The plaintiff testified that he experiences very low blood sugar levels up to twice daily and, at a minimum, three times weekly (Tr. 48-49). He stated further that there is no predictability to his blood sugar level extremes, except

that physical activity, such as bicycle riding, lowers his blood sugar and he has "to be careful" (Tr. 48).

      The Eleventh Circuit has established a standard for evaluating complaints of pain and other subjective complaints. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). As the court of appeals explained in Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain standard "required evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." If the law judge determines that, under this test, there is objectively determined medical evidence of an impairment which could reasonably be expected to produce disabling pain, the law judge "must evaluate the credibility of claimant's testimony as to pain, and must express a reasonable basis for rejecting such testimony." Hand v. Heckler, 761 F.2d 1545, 1549 n.6 (11th Cir. 1985).

      The law judge properly applied the Eleventh Circuit's pain standard. The law judge recognized the need to articulate a credibility

determination, and he referred to the pertinent regulations and Social Security rulings (Tr. 23). Moreover, he set forth the two-step analysis that those rules require (id.). This demonstrates that the law judge employed the proper standards. See Wilson v. Barnhart, 284 F.3d 1219, 1225-26 (11th Cir. 2002).

The law judge, moreover, evaluated the evidence and set forth a lengthy and detailed explanation for discounting partially the plaintiff's subjective allegations (Tr. 24-26). Notably, the law judge did not totally reject the plaintiff's subjective complaints, but rather concluded that the plaintiff had a severe impairment that restricted him to a reduced range of light work (Tr. 23). Further, the law judge also identified more restrictive sedentary jobs that the plaintiff could perform (Tr. 28-29). Thus, the law judge rejected only the allegations of total disability (Tr. 29). Specifically, the law judge stated (Tr. 24):

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

The law judge then provided several reasons for his credibility

determination.  Thus, the law judge explained (id.):

> The claimant's physical examinations were mostly,
> if not always, unremarkable.  Considering the
> allegations of a disabling impairment, one could
> reasonably expect to see some abnormal findings
> upon physical examination.  The claimant alleged
> that he experiences dizziness and confusion when
> his blood sugar levels fluctuate.  However, the
> claimant reported that he is physically active and
> rides his bike every day (Exhibit 5F).  The
> claimant's reported physical activity appears
> inconsistent with his allegations of disabling
> symptoms.

> It does not appear that the claimant has done all
> that one could reasonably expect him to do to
> control his blood sugar levels despite his
> longstanding condition.  Although the claimant
> visited the hospital in August 2008 with complaints
> of low sugar, the laboratory results indicate that the
> claimant had been drinking [alcohol] as well as
> working out in the heat.  Specifically, the
> claimant's blood alcohol level was 109 mg/dL;
> intoxication is considered at levels greater than 80
> mg/dL (Exhibit 2F).  Additionally, the claimant
> reported eating fried foods at least three times per
> week, which does not seem consistent with a
> diabetic diet.

The law judge continued (Tr. 24-25):

> Considering the allegations of uncontrolled and
> disabling blood sugar levels, the laboratory results

were not as extreme as one might reasonably expect to  find. The claimant's blood sugar levels were only occasionally significantly high or low. ...

....

The allegations of extreme symptoms and variable blood sugars are inconsistent with prescribed treatment.  Although the claimant is prescribed insulin through the Health Department, the treating physicians rarely adjusted the claimant's prescribed treatment.  For example, in October of 2009, the claimant was continued on exercise, diet, and the same insulin.  It was not until April of 2010 that the claimant was told to use Lantus, which is a different kind of insulin, on a sliding scale (Exhibit 7).  Prior to that, it does not appear that the claimant's treatment changed since at least August of 2008.  Moreover, in early 2011, the claimant reported that his blood sugars were between 70 and 100 and denied any complaints.  Additionally, the claimant's hemoglobin was 6.9, which is considered normal for a diabetic.  As such, the diagnostic impression was controlled diabetes mellitus....This certainly suggests that the claimant's condition was manageable with the twice-daily insulin injections (Exhibit 8F). Considering the allegedly variable blood sugar levels, one could reasonably expect the treating physicians to adjust medications more frequently....

The law judge also added (Tr. 25-26):

Moreover, despite reporting that he understood how to take his medication, the records indicate that the claimant failed to follow the prescribed treatment.  As mentioned above, the claimant was supposed to switch to sliding scale Lantus for his

symptoms in April of 2010. On June 16, 2010, the claimant reported a hypoglycemic episode which improved quickly with a small container of orange juice. ... It appears the claimant was not taking medication as prescribed and was to receive instruction and to take it exactly as he was told to do so, indicating that he had not been doing so. Two days later by telephone, the claimant reported that he felt well and understood what he was supposed to be doing.   Despite expressing an understanding of the prescribed insulin dosages, the claimant later admitted that he stopped taking the Lantus one month after starting it because he did not feel that it was working.

He restarted the previous insulin, Novolin, once in the morning and once at night on his own accord in approximately May of 2010 without telling anyone for months (Exhibits 7F and 8F).

It appears that the claimant provided inconsistent and somewhat misleading statements regarding his blood sugar levels and his use of the prescribed Lantus. Specifically, in July of 2010, the treatment notes state that the claimant's blood sugar log was reviewed.   According to the treatment notes, the claimant's log reported blood sugar levels between 300 and 400 around dinner and a few low blood sugars in the morning (Exhibit 7F).   However, those values do not seem to be consistent with the levels indicated in the claimant's log submitted as evidence (Exhibit 9F).   Other values before and after similarly do not seem to be consistent with what is stated in the medical record.   Moreover, as mentioned above, the treatment notes from July of

-11-

2010 indicate that the claimant stated that he continued to take Lantus. Yet, in later treatment notes, the claimant admitted that he stopped taking Lantus soon after it was prescribed. Thus, the claimant's inconsistent information regarding his logged blood sugar levels and his use of Lantus undermine the claimant's credibility. In July 2010 examination was completely normal nevertheless.

Furthermore, the law judge's explanation is supported by substantial evidence. As the law judge noted, the plaintiff's physical examinations were regularly normal; he was observed to be alert, oriented, and in no apparent distress; his cardiovascular and respiratory systems were normal; his HEENT (head, eyes, ears, nose and throat) were normal; and his extremities were normal (see, e.g., Tr. 280, 301, 305, 322, 325-26, 343). See Belle v. Barnhart, 129 Fed. Appx. 558 (11th Cir. 2005) (normal findings on physical examination are relevant to whether the plaintiff's allegations of debilitating diabetes are credible); 20 C.F.R. 404.1529(c)(2), 416.929(c)(2) ("Objective medical evidence ... is a useful indicator to assist in making reasonable conclusions about the intensity and persistence of symptoms and the effect those symptoms ... may have on [a plaintiff's] ability to work."). Further, the plaintiff did not regularly complain to his medical providers of

the symptoms he testified to at the hearing (Tr. 282, 301, 305, 321, 343). Thus, the record reflects complaints of weakness and dizziness on only three occasions (Tr. 261, 258, 325).

Additionally, the law judge reasonably concluded that the plaintiff's laboratory results were not as extreme as one would expect considering the plaintiff's allegations of frequent very low blood sugar levels. Thus, while the law judge acknowledged that the medical records occasionally reflected significantly high or low blood sugar readings, many of the plaintiff's blood sugar levels were normal, or close to it (see Tr. 282) (blood sugar was 99 on September 22, 2009); (Tr. 304) (the plaintiff reported his "bs's [blood sugars] have been good" in February 2010); (Tr. 336) (blood glucose reading was 94 on April 13, 2010); (Tr. 334) (blood sugar was 94 on July 1, 2010); (Tr. 321) (plaintiff reported in August 2010 that "BG [blood glucose] is normally in the 100's"); (Tr. 343) (plaintiff reported in January 2011 that his "AM fasting sugars are between 70 and 100").[4] Notably, although the plaintiff testified at the hearing to uncontrollable blood sugar

---

[4]Target glycemic goals are between 70-130 mg/dl before meals, and an A1C of 7 or lower (Doc. 17-1, p. 2).

fluctuations, the plaintiff's physician specified months earlier that his diabetes was "controlled" (Tr. 48-49, 343).

The law judge's finding is further supported by non-examining, reviewing physician Dr. Murthy Ravipati, M.D., who opined that, based on the plaintiff's medical records, he could perform a restricted range of light work (Tr. 311-18). The plaintiff, on the other hand, does not cite to any credited physician's opinion that his diabetes was functionally debilitating. See Longworth v. Commissioner Social Security Admin., 402 F.3d 591, 596 (6th Cir. 2005) ("a lack of physical restrictions constitutes substantial evidence for a finding of non-disability").[5]

Moreover, substantial evidence supports the law judge's conclusion that the plaintiff was not doing all he could reasonably be expected to do to control his blood sugar levels (Tr. 24). In this regard, there was evidence of the plaintiff's intoxication (Tr. 266), that he was overweight

---

[5]In a form dated May 15, 2009, a physician from Pinellas County Health Department opined in a conclusory manner that the plaintiff was disabled from working (but may participate in other activities without limitation) (Tr. 278). The law judge considered that evidence, but rejected that opinion for several reasons (Tr. 26-27). The plaintiff has not challenged that finding.

and ate fatty or fried foods several times weekly (Tr. 321), and that the plaintiff was non-compliant with his insulin regimen (Tr. 322).

Thus, on April 21, 2010, the plaintiff's physician directed him to discontinue Novolin insulin and start Lantus insulin (Tr. 326). Two months later, the plaintiff reported that he had stopped taking Lantus, but agreed to restart the medication and expressed understanding regarding the dosage instructions (Tr. 323, 324). Accordingly, in July 2010 the plaintiff reported to his medical provider that he was taking Lantus (Tr. 322). However, in January 2011, the plaintiff admitted to his physician that he had stopped taking Lantus and returned to his former regimen of Novolin one month after it was prescribed–back in May 2010 (Tr. 343). In sum, the law judge articulated several cogent reasons for finding the plaintiff's claims of disabling symptoms not fully credible.

The plaintiff argues that "[t]here is no substantial evidence to find the claimant less than fully credible" (Doc. 16, p. 9). The plaintiff challenges every reason the law judge has given for discounting his credibility. The contention that not one of the law judge's reasons is supported by substantial evidence underscores this argument's lack of merit.

It is well-established that responsibility for making credibility determinations is reposed in the Commissioner and his determination is entitled to deference. Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Graham v. Bowen, 790 F.2d 1572, 1575 (11th Cir. 1986) ("The weighing of evidence is a function of the factfinder, not of the district court."). Consequently, to overturn the Commissioner's credibility finding, the plaintiff must show that the evidence compels the contrary finding. Adefemi v. Ashcroft, supra. The plaintiff's criticisms of the credibility finding do not amount to such a showing.

The plaintiff contends first that substantial evidence does not support the law judge's finding that his physical examinations were normal because the record includes abnormal blood sugar and A1C levels, and higher than normal blood pressure (Doc. 16, p. 10). A physical examination is distinct from laboratory blood test results and, as discussed supra, p. 12, the plaintiff's physical examinations were normal (see Tr. 280, 301, 305, 325-26, 343). The law judge discussed the plaintiff's blood sugar and A1C levels separately in the decision, and acknowledged that those results were occasionally abnormal (see Tr. 22, 24, 25,26). Furthermore, the plaintiff did

-16-

not even allege that high blood pressure was a severe impairment (see Tr. 53, 173). Therefore, this challenge is meritless.

Next, the plaintiff argues that his physical activity is not, as the law judge found, inconsistent with his allegations of disabling symptoms (Doc. 16, p. 10; Tr. 24). The plaintiff testified that he "ride[s his] bicycle a lot" (Tr. 50; see also Tr. 304 (the plaintiff rides his bicycle everyday)). The law judge could reasonably conclude that the plaintiff's frequent bicycle riding is inconsistent with his testimony that he suffers from unpredictable drops in his blood sugar level that make him dizzy, confused, and he may require assistance "to get sugar in [him]" (Tr. 48, 49, 51). See 20 C.F.R. 404.1529(c)(3), 416.929(c)(3); May v. Commissioner of Social Sec. Admin., 226 Fed. Appx. 955, 959 (11th Cir. 2007) (The plaintiff's daily activities are properly included in the evaluation of the credibility of his complaints).

The plaintiff argues that frequent bicycle riding is not inconsistent with debilitating diabetes symptoms because he typically experiences low blood sugar in the morning, thereby allowing him to bicycle later in the day without incident (Doc. 16, p. 10). However, the testimony cited by the plaintiff in support of this contention does not indicate that low

blood sugar levels occur in the morning (id., citing Tr. 53-54). To the contrary, that testimony refers to the plaintiff's alleged blood sugar swings while at work, and that his work colleagues would "keep an eye on [him] constantly" to make sure he was not feeling ill (Tr. 54). Moreover, when the law judge asked the plaintiff whether there were certain times of the day that his blood sugar goes up or down, the plaintiff stated "it ... varies" (Tr. 48). Therefore, the law judge could reasonably find that the plaintiff's frequent bicycle riding is inconsistent with his contention of unpredictable and extreme drops in his blood sugar levels. Indeed, that activity strongly undercuts such a contention.

The plaintiff next disputes the law judge's finding that he failed to "do[] all that one could reasonably expect him to do to control his blood sugar levels" (Doc. 16, p. 11; Tr. 24). The plaintiff alleges that it is unreasonable for the law judge to find his testimony not fully credible based on one (documented) episode of alcohol intoxication (Doc. 16, p. 11). However, as mentioned supra, the plaintiff's alcohol intoxication was just one example given by the law judge. The law judge also considered the plaintiff's

diet and his failure to take insulin as prescribed by his physician (see Tr. 24, 25).

The plaintiff argues further that the law judge should not have considered his consumption of fried foods because the law judge "is not qualified to state whether fried foods are a reasonable diabetic diet" (Doc. 16, p. 11). This assertion is frivolous. The plaintiff's treating source noted that he was overweight (Tr. 304), and his doctor advised him to eat a healthy diet to improve his diabetes (Tr. 280). Notably, the plaintiff's own exhibit stated with respect to meat and poultry to "[b]ake it, boil it, or grill it"; conspicuously absent is "fry it" (Doc. 16-5, p. 29). The plaintiff, accordingly, has not provided any information showing that fried foods are part of a healthy diet for diabetics. Moreover, the National Institutes of Health, to which the plaintiff refers (Doc. 16, p. 11), states that a healthy diet for a normal person should "[a]void fried foods" (http://www.nlm.nih.gov/ medlineplus/ency/patientinstructions/000330.htm)). And the American Diabetes Association says that fried foods contain "unhealthy fats" and should be limited (http://www.diabetes.org/living-with-diabetes/treatment-and-care/ask-the-expert/ask-the-dietitian/archives/are-fried-foods-totally-

out.htm) (emphasis in original).   It is therefore reasonable for the law judge to conclude that eating fried foods several times weekly is not optimal for maintaining a healthy weight and controlling diabetes.

The law judge also considered the plaintiff's failure to comply with his physician's prescribed treatment (Tr. 25).   Thus, a law judge may consider noncompliance with prescribed treatment as a factor discrediting a plaintiff's allegations.   Ellison v. Barnhart, 355 F.3d 1272, 1275 (11ᵗʰ Cir. 2003); S.S.R. 97–6p, 1996 WL 374186 at *7 ("[T]he individual's statements may be less credible  ... if the medical ... records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure.").[6]  Significantly, the plaintiff does not dispute that he stopped using Lantus insulin without consulting his physician or obtaining his

_____

[6]The plaintiff, citing to Russ v. Barnhart, 363 F. Supp.2d 1345 (M.D. Fla. 2005), argues that it is error "for the ALJ to deny benefits because of failure to follow treatment [as] there has to be a sufficient basis to decide that compliance would restore the claimant's ability to work" (Doc. 16, p. 13).   However, as the Commissioner explains, Russ is inapposite (Doc. 17, pp. 9-10). Russ concerned the denial of benefits for someone who was found disabled because she unjustifiably failed to follow the prescribed treatment. 363 F.3d at 1348.  Here, the law judge did not find the plaintiff disabled, nor was there an issue of whether treatment would restore the plaintiff's ability to work.   Rather, the law judge properly considered the plaintiff's noncompliance only as evidence undermining the credibility of the plaintiff's allegation that his diabetes is functionally debilitating. See Ellison v. Barnhart, supra, 355 F.3d at 1275.

physician's approval (Doc. 16, p. 13; Tr. 344).   Therefore, substantial

evidence supports the law judge's finding that the credibility of the plaintiff's

allegations of debilitating diabetes is undermined by the plaintiff's failure to

do what could reasonably be expected of him  to control his blood sugar

levels.

The plaintiff next challenges the law judge's statement that the

plaintiff's laboratory results were not as extreme as one would expect to find

based on the plaintiff's allegations of uncontrolled and disabling blood sugar

levels (Doc. 16, pp. 11-12).  In this regard the plaintiff argues that the record

contains laboratory results of abnormal blood sugar and A1C levels and the

law judge "is not qualified to state that these are not abnormal enough" (id.).

The plaintiff's argument misses the point.   The law judge

acknowledged that the plaintiff's laboratory results were abnormal on

occasion, and he identified several of them in the decision (see Tr. 22, 24,

25). Rather, the point is that, based on the plaintiff's testimony that he

frequently experiences low blood sugar levels that are debilitating (which the

plaintiff indicated occurs when his blood sugar falls below 50 (Tr. 49)), it is

-21-

reasonable to expect that there would be more laboratory results showing such low blood sugar levels.

In particular, the plaintiff testified at the hearing that he is disabled from working due to very low blood sugar levels that he experiences up to twice daily and, at a minimum, three times weekly (Tr. 49, 51-53). However, the plaintiff identifies in this argument only three such laboratory findings during the alleged disability period encompassing more than two and one-half years (see Doc. 16, pp. 11-12).

The plaintiff also challenges the law judge's statement that, based on the plaintiff's allegations of extremely abnormal blood sugar levels, one would have expected the treating physicians to adjust his medications more frequently (id., p. 12; Tr. 25). The law judge apparently relies upon the plaintiff's hearing testimony that there had been no changes in his treatment regimen in the past couple of years except for a change to Lantus insulin, which the plaintiff rejected (Tr. 24, 25; see Tr. 47).

The plaintiff argues that the law judge's explanation is factually erroneous because there had been another change to his treatment: the addition of Novolin R on a sliding scale in January 2010 (Doc. 16, p. 12; Tr.

305). Notably, the plaintiff did not testify that he had been prescribed, or was taking, Novolin R (Tr. 47-48). Rather, the plaintiff stated at the hearing that he maintains a regimen of Novolin N insulin, twice a day, once in the morning and once at night (Tr. 48). He indicated that the only change was from Novolin N to Lantus, and back to Novolin N (Tr. 47). Regardless, even with the addition of Novolin R insulin, it is reasonable to conclude that the plaintiff's diabetes treatment remained relatively consistent between 2008 and 2011 (see, e.g., Tr. 292, 303, 343-44).

The plaintiff also challenges the law judge's statement "that the [plaintiff] provided inconsistent and somewhat misleading statements regarding his blood sugar levels and his use of the prescribed Lantus" (Tr. 26; Doc. 16, p. 13). As discussed supra, p. 15, the plaintiff misled his medical provider into thinking he continued to take Lantus insulin for months after he had discontinued that medication.

The law judge also noted that the plaintiff's personal "Blood Glucose Values" log that he submitted ("blood sugar log") (Exh. 9F; Tr. 352-60) was not consistent with the blood sugar log presented to his physician (Tr. 26). Specifically, the law judge identified a July 2010 treatment note which

states that the plaintiff's blood sugar log "shows Before Dinner [blood sugar] around 300-400 and some FBS [fasting blood sugar] around 70" (Tr. 26, 322). However, the blood sugar log included in the record does not list any blood sugar values before dinner for the period March 2010 through the date of the July treatment note (Exhibit 9F; Tr. 352-54).

The plaintiff quibbles with the law judge's use of the word "inconsistent," arguing that the blood sugar log he submitted for the record is instead "incomplete" (Doc. 16, p. 13). Semantics aside, the point is that the plaintiff submitted a blood sugar log that was substantively different from the one reviewed by his physician, and there is no explanation for the discrepancy.[7]

The plaintiff contends further that the law judge failed to fulfill his duty to develop the record because the law judge, while noting in the decision that he does not know how the plaintiff's blood sugar log was created, failed to ask the plaintiff about the log and did not request "a

---

[7]The plaintiff also argues that the law judge did not adequately support his statement that "[o]ther values before and after similarly do not seem to be consistent with what is stated in the medical record" (Doc. 16, p. 13; Tr. 26). This contention is meritless because the plaintiff's laboratory blood glucose values on April 13, 2010, and July 1, 2010, were normal range readings of 94, and the plaintiff's log on those dates contains no values close to those readings (Tr. 334, 336).

supplemental log to include all [blood sugar] readings" (Doc. 16, pp. 13-14; Tr. 26). This contention is meritless.

Although the law judge has a basic duty to develop a full and fair record, "the claimant bears the burden of proving that he is disabled and, consequently, he is responsible for producing evidence in support of his claim." Ellison v. Barnhart, supra, 355 F.3d at 1276; see also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001); 20 C.F.R. 404.1512, 416.912. Furthermore, the law judge's basic obligation concerns the development of the claimant's medical history for the twelve months preceding the filing of the disability application. Ellison v. Barnhart, supra. The plaintiff does not allege that the law judge failed to do this.

Rather, the blood sugar log was purportedly created almost one year after the plaintiff filed his disability application. Furthermore, the plaintiff was represented by an attorney during the administrative proceedings (Tr. 20). Therefore, the attorney should have been aware that the plaintiff's blood sugar log was incomplete, its factual basis was unknown, and it did not include identifying information. Under these circumstances, the burden was on the plaintiff and his lawyer, and not the law judge, to supplement the log

or show that the blood sugar log was nonetheless probative evidence. Osborn v. Barnhart, 194 Fed. Appx. 654, 668-69 (11th Cir. 2006); Smith v. Schweiker, 677 F.2d 826, 829 (11th Cir. 1982) (the law judge is not required to act as counsel to the plaintiff).

Finally, the plaintiff argues that his allegation of disabling diabetes is not inconsistent with medical records that show significantly abnormal blood sugar levels only on an infrequent basis (Doc. 16, p. 14). In this regard, the plaintiff contends that he experiences very low blood sugar levels frequently enough to make gainful employment impossible (id.).

The plaintiff relies on his blood sugar log (that does not cover the entire claimed disability period) which allegedly shows an "average of at least 2.6 low [blood sugar] readings per month" between February 2010 and February 2011 (id., pp. 14-15). The plaintiff makes the conclusory assertion that two or three very low blood sugar levels monthly preclude gainful employment. However, such infrequent low blood sugar levels do not necessarily mean that the plaintiff would be off-task at work at all because low blood sugar levels may occur during off-work hours. Furthermore, the law judge's finding is premised upon the laboratory blood test results, not the

plaintiff's personal blood glucose log, and the laboratory results reflect an average of less than one significantly low blood sugar reading monthly. The law judge could reasonably conclude that that average does not preclude gainful employment.

In sum, the law judge provided a thorough and detailed credibility determination (more so than most at this level of review), and the determination is amply supported by substantial evidence. The plaintiff has not shown that the evidence compelled the law judge to find that the plaintiff's testimony was entirely credible. Adefemi v. Ashcroft, supra.

B. The plaintiff's second argument is that the law judge should have found him disabled for the closed period of January 15, 2010, through January 4, 2011 (Doc. 16, pp. 6, 15-16). The law judge found that the plaintiff was not disabled from April 1, 2007, through the date of the decision (Tr. 29). Nonetheless, even accepting the plaintiff's contention that he was unable to work due to diabetes from January 15, 2010, until January 4, 2011, the plaintiff still fails to establish eligibility under Social Security law because "disability" is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical ... impairment ...

which has lasted ... for a continuous period of <u>not less than 12 months</u>." 42 U.S.C. 423(d)(1)(A), 1382c(a)(3)(A) (emphasis added); <u>see also</u> 20 C.F.R. 404.1509, 416.909.  The closed period advocated by the plaintiff is eleven and one-half months.  Thus, that time period is not, as a matter of law, of sufficient duration to qualify as a disability under Social Security law.

       C. The plaintiff's final argument is that the law judge erred by not finding that he had a severe impairment of brittle diabetes (Doc. 16, pp. 6, 16).  Brittle diabetes is an extreme variability in the blood glucose (<u>id.</u>, p. 16).  The plaintiff's treatment notes reflect one diagnosis of brittle diabetes on April 21, 2010 (Tr. 326).  That diagnosis, moreover, was stated by a doctor (Katherine Banull), who, from all that appears, saw the plaintiff only once.

       Furthermore, materials submitted by the plaintiff indicate that there is a disagreement in the medical community about when the term "brittle diabetes" should be used (Doc. 16-1, p. 19).  One view is that "the term 'brittle' diabetes is reserved for those cases in which the instability, whatever its cause, results in disruption of life and often recurrent and/or prolonged hospitalization" (<u>id.</u>, p. 17).  There is no evidence in this case

which shows that the plaintiff falls into that category.  Arguably, therefore, the law judge implicitly rejected the diagnosis of brittle diabetes.

However, even if it is thought that the law judge did not consider the diagnosis of brittle diabetes because it was a single entry in the medical evidence, the law judge has already considered the plaintiff's alleged extreme fluctuations in his blood sugar levels in connection with his severe impairment of diabetes mellitus, so that it appears that brittle diabetes is subsumed under that impairment.

Regardless, any purported failure in identifying brittle diabetes as a distinct severe impairment is harmless.  The Eleventh Circuit has held that "step [two] acts as a filter; ... the finding of any severe impairment ... is enough to satisfy the requirement of step two." Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).  Because the law judge found that the plaintiff has severe impairments, he did not stop prematurely at step two, but proceeded on to the following steps in the sequential analysis. See Maziarz v. Secretary of Health & Human Services, 837 F.2d 240, 244 (6th Cir. 1987). Consequently, in order to demonstrate reversible error based upon a mistake regarding a level of severity of an impairment, the plaintiff must show that he

had functional limitations from that condition that were not included in the law judge's determination of the plaintiff's residual functional capacity.

Thus, "a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on h[is] ability to work." Wind v. Barnhart, 133 Fed. Appx. 684, 690 (11th Cir. 2005) (quoting McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986)). In other words, it is the functional limitations that determine disability. Moore v. Barnhart, 405 F.3d 1208, 1213 n. 6 (11th Cir. 2005); McCruter v. Bowen, supra.

Disregarding these principles, the plaintiff contends that the failure to identify brittle diabetes as a severe impairment was reversible error (Doc. 16, p. 16). In this regard, the plaintiff argues (id.):

> The relevancy of the finding of brittle diabetes is that it does affect the residual functional capacity of the claimant. Because [the plaintiff] has abnormal lows and highs, and because they are unpredictable and uncontrollable, they can affect his ability to concentrate and perform competitive employment.

However, as the Commissioner argues, the plaintiff has failed to identify any limitations caused by the plaintiff's alleged brittle diabetes independent from his allegations of functional limitations caused by his diabetes mellitus. Thus, the symptoms the plaintiff identifies in connection with brittle diabetes are the same symptoms and limitations he alleged with regard to diabetes mellitus (Tr. 48, 49, 51, 53; Doc. 16, pp. 14-15). The law judge already considered these symptoms and incorporated into the plaintiff's residual functional capacity those functional limitations that he found credible (Tr. 22, 24). Therefore, the plaintiff has failed to show that characterizing brittle diabetes as a distinct severe impairment would have affected the law judge's determination of his residual functional capacity. Accordingly, this contention is meritless.

## IV.

For these reasons, the decision of the Commissioner is supported by substantial evidence and does not contain reversible error. I, therefore,

-31-

recommend that the decision be affirmed.

Respectfully submitted,

_____

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED: DECEMBER ⟨⟩, 2013

NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal.  28 U.S.C. 636(b)(1).